# UNITED STAES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-------------------------------------------------------------X
                                          :
LEONARD A. BERLIN, D.O., Individually and :
Derivatively on Behalf of Nominal Defendant :   Civil Action No.:_____
L.A. CARE INDUSTRIES, LLC,                :
                                          :
            Plaintiffs,                   :
                                          :
      Vs.                                 :
                                          :
ARTHUR B. GREENE AND ABLETRIPOD, LLC,     :
                                          :
            Defendants,                   :
                                          :
L.A. CARE INDUSTRIES, LLC,                :
                                          :
            Nominal Defendant.            :
                                          :
-------------------------------------------------------------X
```

## COMPLAINT

Plaintiff, Leonard A. Berlin, D.O. ("Dr. Berlin"), individually and derivatively for and in the name of L.A. Care Industries, LLC ("LA Care"), by its attorneys, respectfully bring this Verified Complaint against the defendants, Arthur B. Greene ("Mr. Greene") and AbleTripod, LLC ("ATL").

### PRELIMINARY STATEMENT

1.      Dr. Berlin, as an internal medicine specialist, treated geriatric patients for decades and invented the AbleTripod.  Because of its design and its unique composition, as well as its well know trade name, the AbleTripod is widely recognized as one of the best cane tips available to the public.  The AbleTripod is a patented cane base that makes a cane stand on its own and provides added balance, traction and stability on almost any surface. The AbleTripod flexes as the user walks to reduce impact on the hand and wrist.

**JURY TRIAL DEMANDED**

2.      Dr. Berlin and Mr. Greene formed LA Care in 1999 to sell the AbleTripod. Originally, Dr. Berlin developed and perfected the product, established sales connections and handled the finances.  Mr. Greene oversaw order fulfillment.  The AbleTripod was patented, and the name and logo are trademarked.  LA Care owns both trademarks.

3.      Starting in 2017 or 2018, Mr. Greene progressively excluded Dr. Berlin from LA Care until he eventually froze Dr. Berlin out of LA Care, completely.  Mr. Greene converted all of LA Care's tangible assets.  He made false statements to the Connecticut Secretary of State, dissolved LA Care without authorization, stole LA Care's products, intellectual property, assets, domain, trade secrets and website and diverted the same to a competing business, ATL.  ATL illegally uses LA Care's trademarks, domain and website.  Upon information and belief, Mr. Greene also converted LA Care's funds.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121 in that plaintiffs have asserted claims pursuant to federal statutes including the Lanham Act. 15 U.S.C. §§1125 *et seq.*, the Computer Fraud and  Abuse Protection  Act, 18 U.S.C. §§ 1030 *et seq.*, and the Anti-Cybersquatting Consumer Protection Act 15 U.S.C. §§1125 *et seq.*

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), in that virtually all the acts and the conduct constituting the violations of law complained of herein occurred in this District.  Defendants reside in this District.

**THE PARTIES**

6.      Nominal plaintiff LA Care is an improperly dissolved limited-liability company organized under the laws of the State of Connecticut.  It owns the AbleTripod trademarks, the domain name www.abletripod.com, and all of the assets converted by defendants.

7.     Plaintiff Leonard A. Berlin, D.O. is a fifty percent owner of LA Care and is a citizen of and resides in Dix Hills, New York.

8.     Defendant Arthur B. Greene was a fifty percent owner of LA Care and resides in West Hartford, Connecticut.

9.     Defendant ATL is a Connecticut limited-liability company formed in 2017.  Upon information and belief, it is wholly owned by Mr. Greene.

## BACKGROUND

10.     In 1996, Dr. Berlin developed the idea of a self-standing cane by adding a retrofitted base to a single axis cane.  He came up with the invention because his patients were struggling using bulky quad based canes (canes with four tips).

11.     Dr. Berlin designed several different prototypes to perfect his invention.  Using Play-Doh and weights from a fishing kit, he tried different shapes until he developed a cane tip that approximately looks like today's AbleTripod.

12.     Dr. Berlin first met Mr. Greene in the mid-1990s during a family vacation.  Mr. Greene told him that he was a former shop teacher and was self-employed.  He designed molds and packages.  In the mid to late 1990s, Mr. Greene told Dr. Berlin that his business was failing.

13.     In 1997, Dr. Berlin asked Greene to join him in a business to manufacture and sell the cane tip Dr. Berlin had developed.  They obtained two patents in 1999 and 2000.  Dr. Berlin created the name AbleTripod, which was registered in 2005 (Registration No. 2979542), and designed the AbleTripod logo (Registration No. 3062130) (collectively, the "Registered Trademarks") which were both registered in 2005.  A copy of the registrations are attached as Exhibit A.  They have been featured on the product since its inception:  The following is a picture of the AbleTripod with its distinctive trademark.

3



14.     In 1999, Mr. Greene and Dr. Berlin retained a lawyer in Stamford Connecticut (attorney Knopf) who provide them with a form operating agreement for LA Care, which they both signed.  LA Care was formed at approximately the same time.  Dr. Berlin and Mr. Greene also approved manufacturing samples from a contract manufacturer in Hong Kong/China and began to sell the AbleTripod.

15.     Dr. Berlin showed the AbleTripod to medical equipment representatives and discussed it with physical medicine and rehabilitation physicians.  He figured out how to get the AbleTripod approved for reimbursement by Medicare as a tripod cane by adding the AbleTripod to a single axis cane.  Dr. Belin marketed the AbleTripod to pharmacies, medical supply companies, hospitals and nursing homes.  He went to a physical therapy convention and demonstrated the AbleTripod to further develop that market.  Dr. Berlin wrote and arranged for the production and airing of an AbleTripod commercial video for cable television. In addition to working on sales, Dr. Berlin also helped develop different aspects of the business.

16.     Dr. Berlin arranged a research study of the AbleTripod at Johns Hopkins University Hospital and he demonstrated the AbleTripod to physical therapy professors and they were so impressed with this new product that they added it to a leading physical therapy text book.  As a result of his efforts, it was also included in a study at Northern Illinois University.

Dr. Berlin developed and negotiated large sales to drugstore and grocery store chains as well as durable medical device distributors. He also convinced QVC (the television shopping channel) to put the AbleTripod on its channel and he appeared on TV and sold the product four to five times a year for many years.

17.    Dr. Berlin was responsible for order fulfillment, accounts receivable and accounts payable for LA Care.

18.    The relationship between Dr. Berlin and Mr. Greene started to deteriorate in 2009. Mr. Greene was working at Timex. Dr. Berlin tried to oversee product fulfillment which was being done in Connecticut. However, Mr. Greene directed the employees not to cooperate with Dr. Berlin. Mr. Greene's smoldering anger at Dr. Berlin continued to fester. Mr. Greene caused LA Care to pay for his personal expenses.

19.    By 2017, the relationship became unworkable. Mr. Greene hired his wife as an LA Care employee. Mr. Greene also diverted all receipts to a new LA Care bank account which he opened. Mr. Greene made himself the sole signatory on the account.

20.    On February 3, 2017, Mr. Greene sent an email stating "[m]ake me an offer to buy me out or tell me what you want for me to buy you out because this isn't working."

21.    On March 24, 2017, Mr. Greene secretly filed a false "Notice" with the Connecticut Secretary of State which stated that Dr. Berlin was no longer a member of LA Care. Mr. Greene certified, under penalty of perjury, that all the information in the Notice was true. Mr. Greene knowingly made material false statements under oath in the Notice.

22.    On July 30, 2018, Mr. Greene secretly made a second false filing with the Connecticut Secretary of State purporting to dissolve LA Care. This filing was also certified under penalty of perjury. It was also not true. Mr. Greene failed to follow any of the

requirements set forth in LA Care's Operating Agreement to dissolve LA Care. The filing was wholly improper. Like the prior filing, Mr. Greene did not provide a copy to Dr. Berlin or let him know.

23.     At approximately the same time, Mr. Greene secretly created ATL. Mr. Greene did this while LA Care was still an operating entity. Mr. Greene locked Dr. Berlin out of everything associated with LA Care.

24.     Mr. Greene refused to answer multiple requests for corporate records from Dr. Berlin. Because Mr. Greene had excluded Dr. Berlin from all aspects of LA Care's operations, he had sole control over the corporate records and the business.

**The AbleTripod and Its Trademarks are Distinctive**

25.     Upon information and belief, Mr. Greene is the sole owner of ATL. Upon further information and belief, he took LA Care's money, inventory, customer lists, computer software, and data files and used them for ATL. He appropriated LA Care's website and made it into an ATL website. He appropriated LA Care's URL. He appropriated LA Care's intellectual property and trade secrets. In essence, he took all LA Care's assets and employees and opened his own business.

26.     As a result of the long and extensive use of the Registered Trademarks, and the promotion of the AbleTripod, it has achieved widespread public exposure in the cane/cane tip market. It is distinctive and well-known among resellers and the public who purchase this type of product.

27.     Defendants took advantage of LA Care's hard work to start selling the AbleTripod in volume. LA Care was a well-established industry innovator and leader in designing and selling cane tips. Its AbleTripod product was the best in the industry.

28.     Its design has become so popular and well-recognized that it attracts competitors who attempt to capitalize on LA Care's success by copying its structure.  However, the composition of cane tip is a trade-secret that defendants stole, copied and exploited.

**Theft of LA Care's Intangible Personal Property and Trademark**

29.     Defendants are infringing LA Care's intellectual property rights by using Registered Trademarks and by using its trade secrets, including its customer list.  Defendants have also stolen LA Care's web domain and website.

30.     In 2018, defendants basically took the original website, removed references to LA Care, and substituted themselves as the seller of AbleTripod.  The LA Care website had the statement "Copyright © 2015 LA Care Industries LLC. All rights reserved." Ironically, the LA Care copyright statement remained on the ATL website until 2019.  While the original website referenced LA Care as the owner and inventor of the AbleTripod, the current version only mentions Mr. Greene.  The abletripod.com website now contains a fictitious story created by Mr. Greene in which he claims that he "invented the Abletripod (sic) for my [his] father who, when visiting our home in 1998, leaned his cane against the wall and as his cane fell over he fell when trying to pick it up."  The website now has the statement "Copyright © 2019 AbleTripod."

31.     In addition to its website and domain name, LA Care still owns the Registered Trademarks.

32.     While the domain name is still registered to LA Care, defendants have taken full control of LA Care's domain name, abletripod.com, and the website.  The contact information for the abletripod.com website is art@abletripod.com (defendant Arthur Greene) and plaintiffs cannot access either the domain or website.  Since LA Care did not have a storefront, the website was its primary direct to retail channel.

33.    Defendants used the abletripod.com domain in bad faith to unlawfully profit from the Registered Trademarks.  As alleged above, defendants sell the identical can tip, made, upon and belief, by the identical supplier, using the identical Registered Trademarks and brand name, using a website and domain owned by LA Care.

34.    LA Care also has common law trademark rights in the Registered Trademarks, by virtue of their continuous use of the mark in commerce throughout the United States since 1998 until defendants stole them.

35.    LA Care has established valuable (indeed, invaluable) trademark rights and goodwill in the Registered Trademarks because of their long use and registration of the trademarks and the promotional and marketing efforts under the trademarks.

36.    Defendants' identical product, offered, sold, and advertised using the Registered Trademarks on LA Care's domain and website and using LA Care's customer list has generated substantial revenue for ATL.  This revenue belongs to LA Care.

**A Derivative Action Is Appropriate**

37.    The sole purpose of all these actions was to take Dr. Berlin's share of LA Care. After all, had Dr. Berlin really withdrawn from LA Care, there would be no need to create a new entity.  It was all part of Mr. Greene's scheme to defraud LA Care and Dr. Berlin.

38.    Mr. Greene flagrantly violated his fiduciary duties to LA Care and its other owner through a course of illicit transactions, self-dealing and conversion–all orchestrated to benefit himself at the expense of LA Care.  He stole all of LA Care's business and literally destroyed LA Care by filing false dissolution papers with the Connecticut Secretary of State.

39.     Plaintiff Dr. Berlin brings this action in his own right, and derivatively, in the right and for the benefit of LA Care, to redress injuries suffered by LA Care as a direct result of the

breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, conversion of intellectual property and trade secrets and other conduct alleged herein.

40.     Dr. Berlin will adequately and fairly represent the interests of LA Care in enforcing and prosecuting its rights.  He is the only person who can do so.

41.     Dr. Berlin was a member of LA Care during times relevant to Mr. Greene's wrongful course of conduct alleged herein and remains a member despite Mr. Greene's illegal dissolution based on false statements, made under oath, to the Connecticut Secretary of State.

42.     Dr. Berlin is excused from making demand as he is the only non-defendant owner of LA Care and Mr. Greene has illegally attempted to dissolve LA Care as part of his scheme to steal all its assets.  A demand would be futile.

**FIRST CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**

43     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

44.     Mr. Greene owed and owes LA Care and Dr. Berlin fiduciary obligations. Because of his fiduciary relationship, Mr. Greene owed and owes LA Care the highest obligation of good faith, fair dealing, loyalty and due care.

45.     Mr. Greene violated and breached his fiduciary duties of care, loyalty, and good faith.

46.     Since he essentially stole the entire company for himself and formed a competitor, Mr. Greene's actions could not have been a good faith exercise of prudent business judgment to protect and promote LA Care's corporate interests.

47.     As a direct and proximate result of Mr. Greene's breach of his fiduciary obligations, LA Care has sustained significant damages. As a result of the misconduct alleged herein, Mr. Green is liable to plaintiffs.

## SECOND CAUSE OF ACTION
### (Self-Dealing)

48.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

49.     Mr. Greene's theft of LA Care's intellectual property, assets, personal property, website, trade secrets and customer relationships so that he could open a competitor business amounts to unfair and improper self-dealing.

50.     As a result of Mr. Greene's improper self-dealing, he is liable to LA Care.

## THIRD CAUSE OF ACTION
### (Waste of Corporate Assets)

51.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

52.     As a result of the Mr. Greene's actions and improper diversion of the LA Care's assets for his own use, and by failing to consider LA Care's interests, Mr. Greene has wasted valuable corporate assets.

53.     As a result of the waste of corporate assets, Mr. Greene is liable to LA Care.

## FOURTH CAUSE OF ACTION
### (Trademark Infringement Under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a))

54.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

55.    Without LA Care's consent, defendants used and continue to use in commerce the Registered Trademarks, as described above, in connection with the offering, sale, and advertising of canes and cane tips, which are likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

56.    Defendants' actions described above have at all times relevant to this action been willful.

57.    As a direct and proximate result of defendants' actions alleged above, LA Care has been damaged and will continue to be damaged.

58.    LA Care has suffered and will continue to suffer irreparable harm from defendants' infringing acts.

### FIFTH CAUSE OF ACTION
**(Trademark Infringement, False Designation of Origin, and Unfair Competition Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))**

59.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

60.    Defendants' actions are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the products and services and commercial activities of ATL, and thus constitute trademark infringement, false designation of origin, and unfair competition with respect to the Registered Trademarks, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

61.    Defendants' actions described above have at all times relevant to this action been willful.

62.    As a direct and proximate result of defendants' actions alleged above, plaintiffs have been damaged and will continue to be damaged.

63.     Plaintiffs have suffered and will continue to suffer irreparable harm from defendants' infringing acts.

### SIXTH CAUSE OF ACTION
### (Common Law Trademark and Trade Dress Infringement, Unfair Competition, and Misappropriation)

64.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

65.     Defendants' actions described above, including its manufacture, sale, offer for sale, display and distribution of the AbleTripod constitute common law trademark infringement, trade dress infringement, unfair competition, and misappropriation of LA Care's goodwill under the common law of Connecticut and other states.

66.     Defendants' actions described above have at all times relevant to this action been willful.

69.     As a direct and proximate result of defendants' actions, plaintiffs have been damaged and will continue to be damaged.

### SEVENTH CAUSE OF ACTION
### (Violation of the Connecticut Unfair Trade Practices Act)

70.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

71.     By engaging in the acts alleged above, defendants have willfully and maliciously engaged in conduct offensive to public policy, governing statutes, common law principles, and established concepts of fairness.

72.     Defendants' willful and malicious conduct was and is immoral, unethical, oppressive, and unscrupulous.

73.     Defendants' conduct has caused and will continue to cause substantial injury to the plaintiffs and create confusion in the public marketplace.

74.     Defendants committed such acts, and continue to commit such acts, in the conduct of trade or commerce.

75.     Plaintiffs have suffered an ascertainable loss of money or property as a result of defendants' actions, including by way of illustration but not limitation, revenues from the sale of the AbleTripod.

76.     By virtue of the conduct above, defendants have engaged in unfair competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*.

### SEVENTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets, 18 U.S.C. § 1836)

77.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

78.     The log-in credentials to the abletripod.com domain, the composition of the AbleTripod product, and its customer list, as well as the terms of those relationships (collectively, the "Trade Secrets") are protectable trade secrets owned by LA Care.

79.     The log-in credentials are not publicly available.  LA Care maintained their confidentiality.

80.     The chemical composition of the AbleTripod cane tip, with the trade name itself, are the distinctive features which set the AbleTripod apart from competitor products.  Only LA Care (and now ATL) and the manufacturer knew the formula for the product.

81.     These trade secrets were not disclosed to any third-parties unless such disclosure was absolutely necessary to further LA Care's business objectives.

82.     The independent economic value of the log-in credentials, the composition of the AbleTripod, and the customer list and terms are self-evident.

83.     Because ATL now has sole control of the Trade Secrets, it crippled LA Care's business by, for example, stealing all of LA Care's sales.

84.     Mr. Greene had access to these trade secrets as an owner and officer of LA Care for the sole purpose of discharging his responsibilities as an owner and officer of LA Care.

85.     As a result of Defendants' unauthorized misappropriation of plaintiffs' trade-secret log-in credentials, and the theft of its secret formula for the AbleTripod cane tip, along with the other bad acts described herein, defendants have stolen plaintiffs' business, completely.

## EIGHTH CAUSE OF ACTION
### (Connecticut's Trade Secrets Act, Conn Gen. Stat. § 35-50 *et seq.*)

86.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

87.     As set forth above, the Trade Secrets are protected by the Connecticut Trade Secrets Act and these Trade Secrets are owned by LA Care.

88.     The log-in credentials are not publicly available.  LA Care maintained their confidentiality.

89.     The chemical composition of the AbleTripod cane tip, with the trade name itself, are the distinctive features which set the AbleTripod apart from competitor products.  Only LA Care and the manufacturer knew the formula for the product.

90.     These trade secrets were not disclosed to any third-parties unless such disclosure was absolutely necessary to further LA Care's business objectives.

91.     The independent economic value of the log-in credentials, the composition of the AbleTripod, and the customer list and terms are self-evident.

92.     Because ATL now has sole control of the Trade Secrets, it crippled LA Care's business by, for example, stealing all of LA Care's sales.

93.     Mr. Greene had access to these trade secrets as an owner and officer of LA Care for the sole purpose of discharging his responsibilities as an owner and officer of LA Care.

94.     As a result of Defendants' unauthorized misappropriation of plaintiffs' trade-secret log-in credentials, and the theft of its secret formula for the AbleTripod cane tip, along with the other bad acts described herein, defendants have stolen plaintiffs' business, completely.

**NINTH CAUSE OF ACTION**
**(Violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d))**

95.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

96.     Plaintiff LA Care owns the Registered Trademarks.

97.     LA Care regularly, continuously and systematically used the Registered Trademarks in commerce since at least 2005 before defendants stole the same.

98.     The Registered Trademarks, particularly "abletripod," are inherently distinctive or has garnered a secondary meaning through regular and continuous use in the marketplace such that in the marketplace,  LA Care's marks have become synonymous with and singularly identify its business.

99.     Defendants stole and now use LA Care's domain name, abletripod.com, which incorporates one of its trademarks, and used and uses it to sell LA Care's product using the Registered Trademarks.

100.     Defendants intentionally infringed upon LA Care's trademark with the malicious intent to steal all of its clients and destroy its business.  Defendants appropriated LA Care's good will as their own and caused confusion as to the source, sponsorship, affiliation, or endorsement of the abletripod.com website.

101.     Because of defendants' unlawful and intentional use of LA Care's protected

trademark within its domain name, consumers ae likely to confuse or mistake ATL's stolen website for LA Care's website.

102.    Defendants' use of LA Care's trademark in its domain name was done with a bad faith intent to steal its business and destroy LA Care.

103.    LA Care was damaged as a result.

## TENTH CAUSE OF ACTION
### (Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*)

104.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

105.    18 U.S.C. § 1030(g) allows a plaintiff to maintain a civil action against individuals who damage or access a computer without authorization if such conduct causes, in the aggregate, more than $5,000 in losses in a single year pursuant to 18 U.S.C. § 1030(c)(4)(a)(i)(I).

106.    Mr. Greene had control over LA Care's computer systems.  He appropriated the same and, upon information and belief, elected to use them, and all of the information contained therein, at his new venture, ATL.

107.    Because he took LA Care's computer system, he was able to appropriate all of its customer data, pricing, volume and other trade secrets.  He also accessed and took control of LA Care's website and also ported it over to his new venture, ATL.

108.    As a result of the foregoing, LA Care has lost its entire business, including hundreds of thousands of dollars of sales.

## ELEVENTH CAUSE OF ACTION
### (Appointment of A Receiver)

109.    Plaintiffs incorporate by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

110    As a direct and proximate result of Mr. Greene's actions as alleged herein, including but not limited theft of LA Care's business and transferring everything to his new limited-liability company, ATL, as well as his breach of fiduciary duties, self-dealing, waste, conversion of corporate assets and civil theft, LA Care, its business and goodwill has suffered from irreparable harm and will continue to suffer irreparable injury.

111.    ATL's products and its entirety is LA Care under a different name and with a single owner, Mr. Greene.

112.    This Court may, under its general equity powers independent of any state statute, appoint a receiver for ATL in order to prevent continued and threatened diversion or loss of assets through Mr. Greene's gross fraud and theft.

113.    Pursuant to its inherent authority and, *inter alia,* Conn. Gen. St. § 52-507 this Court may appoint a receiver for the ATL.

114.    Dr. Berlin is unable to stop Mr. Greene's illegal conduct absent a receiver and the continued diversion of all of LA Care's business to ATL.

115.    This Court has the inherent power to appoint a custodian or custodians to manage the affairs of the Company and to prevent the irreparable injury threatened by Mr. Greene.

116.    Accordingly, Dr. Berlin prays that this Court appoint a receiver for a duration and with such powers as the Court determines is just and proper.

## TWELFTH CAUSE OF ACTION
### (Accounting)

117.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

118.    As a member of the LA Care, Mr. Greene owed and arguably owes a continued duty to LA Care to, among other things, account for funds and assets he has taken and transferred to ATL as well as the sales and profits of ATL resulting from the sale of LA Care's products, and use of LA Care's website, domain name, trade secrets and Registered Trademarks.

119.    Because Mr. Greene has wrongfully diverted LA Care's funds and property for their own use, and because the amount, condition and status of the funds and property improperly diverted by the Defendant are not readily ascertainable and because the Defendant has a duty to account for funds of the LA Care and ATL, an accounting is necessary

120.    Dr. Berlin on his own behalf and on behalf of LA Care has no adequate remedy at law.

121.    Accordingly, the Plaintiffs are entitled to a full accounting.

## THIRTEENTH CAUSE OF ACTION
### (Conversion)

122.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

123.    The Defendants, without authorization, diverted LA Care's funds, assets, inventory, intellectual property, trade secrets, computers, domain name,  website, Trade Secrets and other items for their own use to the exclusion of and to the detriment of LA Care.

124.    Defendants continue to wrongfully exercise dominion and control over funds and the aforementioned property that rightfully belong to LA Care.

125.    As a result of the defendants' conversion, plaintiffs have suffered damages.

## FOURTEENTH CAUSE OF ACTION
### (Civil Theft)

126.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

127.    As a result of the actions described above, defendants have wrongfully obtained and withheld LA Care's property with the intent to deprive LA Care of that property and appropriate the same for themselves in violation of Connecticut General Statutes § 53a-119.

128.    By virtue of the foregoing, LA Care has suffered and will continue to suffer damages.

129.    By virtue of the foregoing, LA Care is entitled to treble damages pursuant to Connecticut General Statutes § 52-564.

## FIFTEENTH CAUSE OF ACTION
### (Unjust Enrichment)

130.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

131.    By their wrongful acts, defendants were unjustly enriched at the expense of and to the detriment of LA Care.

132.    LA Care is entitled to restitution from Mr. Greene and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by Mr. Greene from his wrongful conduct and fiduciary breaches.

## SIXTEENTH CAUSE OF ACTION
### (Constructive Trust)

133.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

134.    Mr. Greene owed and continues to owe fiduciary duties to plaintiffs.

135.    As a result of Mr. Greene's fraudulent, unfair and unconscionable conduct, Mr. Greene has breached those duties and has been unjustly enriched at the expense of the plaintiffs.

136.     Because of Mr. Greene's wrongful actions, plaintiffs request that the Court order that Mr. Greene hold his assets in constructive trust for the benefit of plaintiffs.

## SEVENTEENTH CAUSE OF ACTION
### (Tortious Interference with Prospective Customer Relations)

137.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

138.     LA Care maintained valuable business relationships with its customers.

139.     Defendants were aware not only of plaintiffs' valuable business relationships with their customers, but also of plaintiffs' desire to maintain and improve those relationships through its website.

140.     Defendants intentionally, willfully and knowingly used, and continue to use, LA Care's web domain to prevent LA Care from servicing its customers and generating new customers.

141.     Defendants' actions and statements have prevented customers from entering into contracts to purchase the AbleTripod from LA Care.

142.     LA Care has been injured in the manner of lost sales and loss of good will.

143.     LA Care has also sustained actual and consequential damages that will be established at trial, and LA Care is entitled to an award of punitive damages, the exact amount of which to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, LA Care and Dr. Berlin request judgment in their favor and against Mr. Greene and ATL as follows:

1.  A preliminary and permanent injunction restoring LA Care's ownership of its domain and website;

2.  A preliminary and permanent injunction restraining ATL, its employees, and all persons in active concert or participation with ATL or with any of the foregoing and Mr. Greene from:

    a.  manufacturing, selling, offering for sale, displaying or authorizing the sale of the AbleTripod;

    b.  manufacturing, selling, offering for sale, displaying or authorizing the sale of products that make use of the Registered Trademarks including use of any trademarks that are confusingly similar to the Registered Trademark;

    c.  manufacturing, selling, offering for sale, displaying, or authorizing the sale of products and product packaging that make use of the Infringing Trade Dress including use of any trade dress that is confusingly similar to the AbleTripod Trade Dress;`

3.  A mandatory injunction directing defendants to turn over all personal property and assets taken from LA Care;

4.  A turnover order directing Mr. Green to turn over his ownership of his interest in LA Care to LA Care;

5.  The appointment of a receiver for ATL;

6.  An accounting of the revenues derived by ATL from the AbleTripod and the LA

Care assets taken;

      7.      Damages pursuant to 18 U.S.C. § 1030(g);

      8.      Damages pursuant to 15 U.S.C. § 1125;

      9.      Double damages pursuant to Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*.

      10.     Treble damages pursuant to Connecticut General Statutes § 53a-119;

      11.     Awarding LA Care its actual damages and ATL's profits in an amount to be determined at trial or statutory damages pursuant to 17 U.S.C. § 504, 35 U.S.C. § 284, and 15 U.S.C. § 1117 and other applicable laws;

      12.     Consequential damages;

      13.     Punitive damages;

      14.     An award of plaintiffs' reasonable attorney's fees and costs; and

      15.     Such other relief as the Court deems just and proper.

                        **THE PLAINTIFFS,**
                        **LEONARD A. BERLIN, DO,**
                        **INDIVIDUALLY AND DERIVATIVELY**
                        **ON BEHALF OF L.A. CARE INDUSTRIES**
                        **LLC**

                        /s/ Simon I. Allentuch
                        Simon I. Allentuch, Esq. (ct21094)
                        Aeton Law Partners LP
                        101 Centerpoint Drive, Suite 105
                        Middletown, Connecticut 06457
                        Tel: 860.270.0559
                        Fax: 860.724.2161
                        Simon@Aetonlaw.com

# VERIFICATION

STATE OF NEW YORK )

                                      SS.

COUNTY OF SUFFOLK )

       I, Leonard A. Berlin, DO, being duly sworn, depose and say that I have read the foregoing

Verified Complaint, and that the allegations set forth therein are true and correct to the best of my

knowledge and information.

                                                            Leonard A. Berlin, DO

Sworn and subscribed to before me this 3rd day of September, 2019.

Izabela Ostapowicz
Notary Public
My Commission Expires: June 19, 2022

IZABELA OSTAPOWICZ
Notary Public - State of New York
NO. 01OS6148052
Qualified in Suffolk County
My Commission Expires Jun 19, 2022